UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
WILMINGTON TRUST, N.A., AS TRUSTEE
FOR THE BENEFIT OF THE REGISTERED
HOLDERS OF WELLS FARGO COMMERCIAL
MORTGAGE TRUST 2016-C36, COMMERCIAL
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2016-C36,

       Plaintiff,

   - against -

LIC HOTEL PROPERTY LLC, NEIL J.
WEISSMAN as Personal Representative of the
Estate of Samuel Klein, FERAY LUES GIRGIN
a/k/a FERAY LUES as Personal Representative of
the Estate of Samuel Klein, EMANUEL KLEIN as
Personal Representative of the Estate of Samuel
Klein, JACOB RAD, and "JOHN DOE # 1"
THROUGH "JOHN DOE # 20," the names of the
"John Doe" defendants being fictitious and unknown
to the Plaintiff, the person or parties intended being
the tenants, occupants, persons or corporations, if
any, having or claiming an interest in lien upon the
premises,

       Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 21-4476

**COMPLAINT**

  Plaintiff Wilmington Trust, N.A., as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-C36, Commercial Mortgage Pass-Through Certificates, Series 2016-C36 ("Plaintiff" or "Noteholder"), by and through its attorneys, Holland & Knight LLP, as and for its Complaint (the "Complaint"), respectfully alleges as follows:

**<u>THE PARTIES</u>**

  1. Plaintiff is the trustee of a REMIC Trust and real party in interest in this action. Wilmington Trust, N.A., is a national banking association with its designated main office located in Wilmington, Delaware. For diversity purposes, a national bank is a citizen of the state in which

1

the bank's main office, as set forth in its articles of association, is located. Therefore, for purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of Delaware. For all purposes of the action described in this Complaint, Plaintiff is acting by and through special servicer Greystone Servicing Company, LLC, a Delaware limited liability company ("Special Servicer"), successor to C-III Asset Management LLC, not individually but solely in its authorized capacity as general special servicer pursuant to that certain Pooling and Servicing Agreement, dated November 1, 2016.

2. Upon information and belief and at all times mentioned herein, defendant LIC Hotel Property LLC ("Borrower") is a New York limited liability company with a principal place of business located at 39-06 30th Street, Long Island City, New York 11101. As Borrower is a limited liability company, its citizenship is determined by that of its members. Borrower consists or consisted of two members: (i) Klein (as defined below), an individual, who, as discussed below, upon information and belief, is deceased, and whose Estate is a citizen of Florida as discussed in paragraph 4 below; and (ii) JSDMJ LLC, a New York limited liability company with a principal place of business located at 77 Cuttermill Road, Great Neck, New York 11021. In turn, JSDMJ LLC consists of five members all having an address at 100 Amber Lane, Oyster Bay, New York 11771: (i) Jacob Rad, an individual residing at 100 Amber Lane, Oyster Bay, New York 11771; (ii) Sandy Rad, an individual residing at 100 Amber Lane, Oyster Bay, New York 11771; (iii) Rad Family Trust FBO Jessica Rad (Irrevocable), with an address at 100 Amber Lane, Oyster Bay, New York 11771, and Sandy Rad as the sole trustee; (iv) Rad Family Trust FBO Melissa Rad, with an address at 100 Amber Lane, Oyster Bay, New York 11771, and Sandy Rad as the sole trustee; and (v) Rad Family Trust FBO Daniel Rad (Irrevocable), with an address at 100 Amber Lane, Oyster Bay, New York 11771, and Sandy Rad as the sole trustee. Based on the citizenship of each of its members, Borrower is a citizen of New York.

3. Borrower is made a defendant in this action because it is an obligor under the Note (defined below), an owner of the mortgaged premises commonly known as and located at 29-14/29-16 39th Avenue (a/k/a 39-11 29th Street a/k/a 39-06/39-14 30th Street), Long Island City, New York 11101 (Block: 399, Lot 22 f/k/a Lots 16 and 22) and more particularly described in **Exhibit 3** annexed hereto (the "Mortgaged Premises"), and the mortgagee under the Mortgage (as defined below) being foreclosed in this action.

4. Upon information and belief and at all times mentioned herein, Samuel Klein ("Klein") was an individual residing at 157 Island Way, Greenacres, Florida 33413. Upon information and belief, Mr. Klein passed away in April 2021 and was a citizen of Florida at the time of his death. On or about June 9, 2021, Letters of Administration were issued for the Estate of Samuel Klein, and Neil J. Weissman, Feray Lues Girgin a/k/a Feray Lues, and Emanuel Klein were appointed as co-personal representatives of the estate of Samuel Klein (the "Estate") with full authority to administer the Estate. Upon information and belief, Neil J. Weissman is an individual residing at 875 East Camino Real, Apartment 16A, Boca Raton, Florida 33432; Feray Lues Girgin a/k/a Feray Lues is an individual residing at 157 Island Way, Greenacres, Florida 33413; Emanuel Klein is an individual residing at 240-39 68th Avenue, Douglaston, New York 11362. Accordingly, Neil J. Weissman, Feray Lues Girgin a/k/a Feray Lues, and Emanuel Klein are named as defendants herein in their capacity as Personal Representatives of the Estate. For diversity purposes, an estate of a decedent or executor/executrix representing an estate of a decedent is a citizen of the state where decedent was a citizen at the time of his death. Therefore, the Estate is a citizen of Florida for purposes of 28 U.S.C. § 1332.

5. Upon information and belief and at all times mentioned herein, defendant Jacob Rad ("Rad") is an individual residing at 100 Amber Lane, Oyster Bay, New York 11771. Upon information and belief, Rad is a citizen of New York.

6. The Estate and Rad (collectively, "Guarantors") are made defendants in this action because Klein and Rad guaranteed Borrower's obligations pursuant to the Guaranty (as defined below).

7. Upon information and belief, "John Doe #1" through "John Doe #20" (the "John Doe Defendants," together with Borrower, Guarantors, the Bank and the City, the "Defendants") are fictitious names and unknown to Plaintiff, and have been made defendants in this action because of possible claims or interests in possession or liens against the Mortgaged Premises.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 because the Mortgaged Premises is located in this judicial district, at least one defendant resides in this judicial district, and a substantial part of the events or omissions giving rise to the claims in this action occurred in this judicial district.

## FACTUAL BACKGROUND

A. **The Loan and Loan Documents**

10. On or about September 29, 2016, Basis Real Estate Capital II, LLC (the "Original Noteholder") loaned Borrower the principal sum of TWENTY-FIVE MILLION AND 00/100 DOLLARS ($25,000,000.00) (the "Loan").

11. In connection with the Loan, Borrower and Original Noteholder entered into that certain Loan Agreement (the "Loan Agreement"), dated as of September 29, 2016, a true and correct copy of which is annexed hereto as **Exhibit 1**.

12. In connection with the Loan, Borrower executed in favor of and delivered to Original Noteholder an Amended, Restated and Consolidated Promissory Note in the principal sum of TWENTY-FIVE MILLION AND 00/100 DOLLARS ($25,000,000.00) (the "Note"), a true and correct copy of which is annexed hereto as **Exhibit 2**.

13. The Note is secured by an Amended, Restated and Consolidated Mortgage and Security Agreement, dated as of September 29, 2016, executed by Borrower in favor of Original Noteholder, encumbering the Mortgaged Premises (the "Mortgage"). The Mortgage granted Original Noteholder a security interest in the Mortgaged Premises, as well as, inter alia, the buildings, structures, fixtures, easements, personal property, and other improvements now owned or hereafter acquired by Borrower, all as more particularly described in Exhibit 3 hereto (collectively, the "Collateral").

14. The Mortgage was duly recorded on October 14, 2016, with the Clerk's Office as CRFN 2016000361142. A true and correct copy of the Mortgage is annexed hereto as **Exhibit 3**.

15. The Note is further secured by an Assignment of Leases and Rents, dated as of September 29, 2016, executed by Borrower in favor of Original Noteholder (the "Assignment of Leases").

16. The Assignment of Leases was duly recorded on October 14, 2016, with the Clerk's Office as CRFN 2016000361143. A true and correct copy of the Assignment of Leases is annexed hereto as **Exhibit 4**.

17. As further security for the Loan, on September 29, 2016, Guarantors executed in favor of and delivered to Original Noteholder a certain Guaranty of Recourse Obligations of Borrower (the "Guaranty") absolutely and unconditionally guaranteeing certain obligations of Borrower due or to become due under the Loan. A true and correct copy of the Guaranty is annexed hereto as **Exhibit 5**.

18. To perfect its interest in the Collateral, on October 14, 2016, Original Noteholder recorded a UCC-1 Financing Statement with the Clerk's Office as CRFN 2016000361144 (as may have been continued, assigned, or amended, the "County UCC"). The County UCC names Original Noteholder as the secured party and Borrower as the Debtor. A true and correct copy of the County UCC is annexed hereto as **Exhibit 6**.

19. To further perfect its interest in the Collateral, on October 11, 2016, Original Noteholder recorded a UCC-1 Financing Statement with the New York Secretary of State as File Number 201610110490006 (as may have been continued, assigned or amended, the "State UCC"). The State UCC names Original Noteholder as the secured party and Borrower as the Debtor. A true and correct copy of the State UCC is annexed hereto as **Exhibit 7**.

20. The Loan Agreement, Note, Mortgage, Assignment of Leases, Guaranty, County UCC, and State UCC, together with all other documents and agreements evidencing and/or security the Loan, are collectively referred to as the "Loan Documents."

**B.** **Assignment of Loan Documents**

21. On or about November 3, 2016, Original Noteholder assigned the Loan and all Loan Documents, including the Note and Mortgage, to Plaintiff. In connection with the assignment to Plaintiff, Original Noteholder executed and delivered to Plaintiff the following:

    a. that certain Allonge by the Original Noteholder in favor of Plaintiff, a true and correct copy of which is affixed to the Note, see Exhibit 2;

b. that certain Assignment of Mortgage, effective as of November 3, 2016, and recorded on February 10, 2017, with the Clerk's Office as CRFN 2017000059188, a true and correct copy of which is annexed hereto as **Exhibit 8**;

c. that certain Assignment of Assignment of Leases and Rents, effective as of November 3, 2016, and recorded on February 10, 2017, with the Clerk's Office as CRFN 2017000059189, a true and correct copy of which is annexed hereto as **Exhibit 9**;

d. that certain UCC-3 Assignment of County UCC recorded on February 10, 2017, with the Clerk's Office as CRFN 2017000059190, a true and correct copy of which is annexed hereto as **Exhibit 10**; and

e. that certain UCC-3 Assignment of State UCC recorded on January 27, 2017, with the New York Secretary of State as File Number 201701270039006, a true and correct copy of which is annexed hereto as **Exhibit 11**.

22. On May 24, 2021, Plaintiff recorded a UCC-3 Continuation Statement of the County UCC with the Clerk's Office as CRFN 2021000192018, a true and correct copy of which is annexed hereto as **Exhibit 12**.

23. On April 20, 2021, Plaintiff recorded a UCC-3 Continuation Statement of the State UCC with the New York Secretary of State as File Number 202104200135330.

24. As of the date hereof, as a result of the assignment described above and evidenced by each of the written assignments, Plaintiff is the owner and holder of the original Loan Documents.

## C. Borrower's Defaults Under the Loan Documents

25. Borrower has failed to comply with the terms and provisions of the Loan Documents based on, inter alia, the occurrence of the following events.

### i. The Payment Default

26. Pursuant to Section 2.2.1 of the Loan Agreement, Borrower was obliged to pay consecutive monthly payments of principal and interest in an amount equal to $134,970.39

("Monthly Debt Service Payment") on the first day of each calendar month ("Payment Date") during the term of the Loan.

27. Section 8.1(a)(i) of the Loan Agreement provides that an Event of Default shall occur if Borrower fails to pay, <u>inter alia</u>, "any regularly scheduled installment of principal or interest. . . on the Payment Date on which such payment is due and payable."

28. On March 1, 2020, Borrower failed to remit the Monthly Debt Service Payment in the amount of $134,970.39.

29. Since March 2020, Borrower has continuously failed to remit the Monthly Debt Service Payment on each successive Payment Debt.

30. Accordingly, an Event of Default has occurred and is continuing under Section 8.1(a)(i) of the Loan Agreement since March 2020 as a result of Borrower's continued failure to remit the amounts due and payable under the Loan Agreement.

**ii. Failure to Comply with Cash Management**

31. Pursuant to the Loan Agreement, a "Cash Management Trigger Event" shall mean that the Debt Service Coverage Ratio (as such term is defined in the Loan Agreement) is less than 1.25:1 for one (1) calendar quarter.

32. On or about March 31, 2020, a Cash Management Trigger Event occurred when the Debt Service Coverage Ratio fell below the required threshold.

33. Pursuant to Section 6.1 of the Loan Agreement, from and after the occurrence of a Cash Management Trigger Event, Borrower shall cause all Rents, credit card payments and other payments received from the operation of the Property to be transmitted directly by non-residential tenants of the Property into a trust account (the "DACA Account") established and maintained by Borrower at a bank reasonably acceptable to Noteholder.

34. Pursuant to Section 6.1 of the Loan Agreement, from and after the occurrence of a Cash Management Trigger Event, "Borrower shall also cause each of the credit card companies with which Borrower has entered into merchant's or other credit card agreements that all Rents and Profits payable with respect to the Property, in accordance with such merchant's agreements or otherwise, to be transferred by wire transfer or the ACH system to the Clearing Bank for deposit in the DACA Account."

35. Following the occurrence of the Cash Management Trigger Event, Borrower failed to comply with the obligations in Section 6.1.

36. Pursuant to the Loan Agreement, a "DSCR Trigger Event" shall mean the Debt Service Coverage Ratio for the Property, as determined by Lender in its sole discretion, falls below 1.20:1 for two (2) consecutive calendar quarters on a trailing twelve (12) month period.

37. On or about December 31, 2020, a DSCR Trigger Event occurred when the Debt Service Coverage Ratio fell below the required threshold.

38. Pursuant to the Loan Agreement, a "Trigger Event" shall occur upon the occurrence of, among other things, an Event of Default and a DSCR Trigger Event.

39. Pursuant to Section 6.1 of the Loan Agreement, from and after a Trigger Event, funds deposited into the DACA Account shall be swept by the Clearing Bank on a daily basis into an Eligible Account controlled by Noteholder and applied and disbursed in accordance with the Loan Agreement and the Cash Management Agreement.

40. Borrower failed to comply with its obligations in Section 6.1 of the Loan Agreement despite the occurrence of a Trigger Event.

41. Section 8.1(a)(xx) of the Loan Agreement provides that an Event of Default shall occur if Borrower "shall fail to perform its obligations under any of the Loan Documents."

42. Accordingly, an Event of Default has occurred and is continuing under Section 8.1(a)(xx) of the Loan Agreement.

43. Moreover, Section 9.3(b)(xxii) provides that Borrower shall be personally liable to Noteholder for the Losses (as such term is defined in the Loan Agreement) if Borrower fails to comply with the provisions of Section 6.1 concerning the opening of a DACA Account and the deposit of all Rents therein from and after the occurrence of a Cash Management Trigger Event.

44. Accordingly, Borrower is personally liable to Noteholder for all Losses in connection with this failure.

### iii. The PPP Loans Default

45. Pursuant to Section 3.1.36(g) of the Loan Agreement, Borrower covenanted and agreed that it has not and shall not, inter alia, "incur any debt, secured or unsecured, direct or contingent (including guaranteeing any obligation)" except in limited circumstances not applicable here.

46. Section 8.1(a)(xiv) of the Loan Agreement provides that an Event of Default shall occur if Borrower "materially violates or does not comply with any of the provisions of Section 3.1.36 [of the Loan Agreement]."

47. Upon information and belief, Borrower obtained Paycheck Protection Loans in the amounts of $287,072.00 and $405,000 (the "PPP Loans"), without the consent or knowledge of Plaintiff.

48. Accordingly, an Event of Default has occurred under Section 8.1(a)(xiv) of the Loan Agreement since April 2020 as a result of Borrower incurring a debt.

49. Moreover, Section 9.3(b)(xii) provides that Borrower shall be personally liable to Noteholder for the Losses (as such term is defined in the Loan Agreement) if Borrower breaches any covenants set forth in Section 3.1.36.

50. Accordingly, Borrower is personally liable to Noteholder for all Losses in connection with the PPP Loans.

### iv. The Permitted Shareholder Loan Default

51. Pursuant to Section 3.1.36(g) of the Loan Agreement, Borrower was permitted to incur as debt Permitted Shareholder Loans, which is defined in the Agreement as "unsecured loans by Samuel Klein in the maximum aggregate sum of $4,500,000.00 to Borrower which are made to provide Borrower with working capital for the operation of its business."

52. As a condition for permitting the Permitted Shareholder Loans, Borrower agreed that, inter alia, "no payment on such loan shall be made if an Event of Default shall be continuing or would be caused thereby."

53. Pursuant to that certain Subordination and Standstill Agreement, Borrower further agreed that "all interest, principal or other payments of any sort whatsoever which are due and payable pursuant to the Shareholder Loan shall only be permitted to the extent there is no Event of Default under the [] Loan Documents."

54. Section 8.1(a)(xiv) of the Loan Agreement provides that an Event of Default shall occur if Borrower "materially violates or does not comply with any of the provisions of Section 3.1.36 [of the Loan Agreement]."

55. Section 8.1(a)(xx) of the Loan Agreement provides that an Event of Default shall occur if Borrower "shall fail to perform its obligations under any of the Loan Documents." The term "Loan Documents" is defined in the Loan Agreement to include "all other documents

executed and/or delivered in connection with the Loan," including the Subordination and Standstill Agreement.

56. Pursuant to Section 9.3(b)(xii) of the Loan Agreement, Borrower is personally liable for any losses incurred due to Borrower's breach of any covenants set forth in Section 3.1.36 of the Loan Agreement.

57. As of December 31, 2019, the Permitted Shareholder Loans reflected a balance of $4,180,718.00. As of March 31, 2020, the Permitted Shareholder Loans reflected a balance of $4,153,577.00.

58. Upon information and belief, while an Event of Default occurred and was continuing under the Loan Agreement as a result of Borrower's failure to pay the Monthly Debt Service Payment on March 1, 2020, Borrower made a $17,774.00 payment on the Permitted Shareholder Loans to Klein.

59. Accordingly, an Event of Default has occurred under Section 8.1(a)(xiv) of the Loan Agreement since March 2020 as a result of Borrower remitting payment towards the Permitted Shareholder Loans while an Event of Default occurred and was continuing.

60. Moreover, Borrower is personally liable to Noteholder for all Losses in connection with any such improper payments.

    v.    **The Tax Default**

61. Pursuant to Section 4.1.2 of the Loan Agreement, Borrower shall "pay all Taxes . . . now or hereafter levied or assessed or imposed against the Property or any part thereof as the same become due and payable."

62. Pursuant to Section 6.3.1 of the Loan Agreement, Borrower is obliged to, <u>inter alia</u>, deposit with Plaintiff sufficient funds to pay all Taxes levied, assessed, or imposed against the

Property or part thereof, including all real estate and personal property taxes, assessments, water rates or sewer rents.

63. Section 8.1(a)(iii) of the Loan Agreement provides that an Event of Default shall occur if, <u>inter alia</u>, any of the Taxes "are not paid on or before the date when the same are due and payable."

64. Section 8.3 of the Loan Agreement provides that, if Borrower fails to perform any of its obligations under the Loan Agreement, Plaintiff may, but shall have no obligation to, perform such obligation, and all costs, expenses, liabilities, penalties and fines of Lender incurred or paid in connection therewith shall be payable by Borrower to Lender and shall bear interest. Plaintiff's performance of a Borrower obligation "shall not cure Borrower's Default or Event of Default."

65. Pursuant to Section 9.3(b)(v) of the Loan Agreement, Borrower is personally liable for any losses incurred due to Borrower's failure to pay Taxes.

66. Borrower has failed and is continuing to fail to pay Taxes levied, assessed, and imposed against the Property.

67. To protect its interest in the Mortgaged Premises, Plaintiff has elected to pay the taxes on behalf of Borrower.

68. Accordingly, an Event of Default has occurred under Section 8.1(a)(iii) of the Loan Agreement as a result of Borrower's failure to pay all Taxes levied, assessed, or imposed as against the Mortgaged Premises.

69. Moreover, Borrower is personally liable to Noteholder for all Losses in connection with any such unpaid Taxes.

## AS AND FOR A FIRST CLAIM
(Foreclosure of Mortgage)

70. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 53 above as though fully set forth herein.

71. Since as early as March 2020, Borrower has failed to comply with the terms and provisions of the Loan Documents, giving rise to multiple Events of Default.

72. By letter dated June 9, 2020 (the "Notice of Default"), Borrower was advised that it was in default under the Loan Documents for failure to timely and properly pay all amounts due and owing under the Loan Documents. A true and correct copy of the Notice of Default is annexed hereto as **Exhibit 13**.

73. Borrower has failed to cure its default despite due demand.

74. By letter dated July 7, 2021 (the "Notice of Acceleration"), Borrower was advised that, by reason of Borrower's failure to cure its default, the maturity date of the Note was accelerated and the whole unpaid principal sums due on the Note and Mortgage, together with all unpaid interest, late charges, default interest, special servicing fees, loan collections costs, legal or any other costs associated with curing the default, are immediately due and payable in full. A true and correct copy of the Notice of Acceleration is annexed hereto as **Exhibit 14**.

75. As of the date hereof, the total outstanding principal balance is $23,216,490.10. These amounts do not include accrued interest, late charges, default interest, special servicing fees, loan collections costs, legal or any other costs associated with curing the Defaults.

76. Pursuant to the terms of the Loan Agreement and Mortgage, Original Noteholder reserved the right to pay taxes and other liens affecting the Mortgaged Premises, which liens, if any, would be and/or are superior to the lien of the Mortgage, and which, when paid by the mortgagee, together with interest thereon as provided in said Loan Documents, are to be added to

the amounts due under the Mortgage. Plaintiff may be required to pay such liens during the pendency of this action and will demand that such payments so made by it be added to the Mortgage debt as aforesaid.

77. In order to protect its security interest in the Mortgaged Premises and Collateral, Plaintiff, as it is entitled to do under the Loan Documents, may be compelled to pay, during the pendency of this action, local taxes, assessments, water rates, insurance premiums, and other charges affecting the Mortgaged Premises, and any sums thus paid by Plaintiff for such purposes, together with late payments due thereon, should be added to the sums otherwise due and deemed secured by the Mortgage and adjudged a lien.

78. Pursuant to the Loan Documents, Borrower must pay Plaintiff's reasonable attorneys' fees expended to foreclose the Mortgaged Premises.

79. Plaintiff has complied with all the terms and provisions of the Loan Documents.

80. No proceeding other than this action has been commenced to recover the debt secured by the Mortgage owed to Plaintiff.

81. Any interest in or lien upon the Mortgaged Premises held or claimed by any Defendant is subject to and junior in priority to the lien of Plaintiff's Mortgage.

82. Upon information and belief, each and all of the Defendants herein have or claim to have some interest in, or lien upon, the Mortgaged Premises or some part thereof, which interest or lien, if any, has accrued after the lien of the Mortgage and is subordinate thereto.

83. In the event that Plaintiff possesses any other lien(s) against said Mortgaged Premises, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's causes of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek or proceeding(s), including, without limitation, any surplus money proceedings.

84. Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinafter made by reason of the payment after the date of the commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, and any and all future defaults under the Loan Documents, and occurring prior to the discontinuance of this action, are fully paid.

85. Plaintiff seeks to foreclose upon the Mortgage and recover the outstanding principal amount of $23,216,490.10 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees and requests that Borrower be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

### AS AND FOR A SECOND CLAIM
#### (Breach of the Guaranty)

86. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 69 as though fully set forth herein.

87. In order to induce Original Lender to make the Loan to Borrower, Guarantors executed, acknowledged, and delivered to Original Lender the Guaranty.

88. Pursuant to the terms of the Guaranty, Guarantors "absolutely and unconditionally" guaranteed "the prompt and unconditional payment of," inter alia, Borrower's obligations and liabilities under Section 9.3 of the Loan Agreement (the "Guaranteed Obligations").

89. Specifically, pursuant to Section 9.3 of the Loan Agreement, Borrower and Guarantors are personally liable to Plaintiff on a joint and several basis for any debts, damages,

16

losses, costs, expenses, fines, penalties, charges, fees, expenses or other obligation incurred by Plaintiff as a result of, inter alia: "(v) Borrower's failure to pay Taxes . . . , (xii) any breach of any covenants set forth in Section 3.1.36 hereof. . . , (xiii) Borrower fails to comply with reporting obligations set forth in Section 4.1.10, (xvi) the enforcement of any of the non-recourse carve-outs. . . , [and] (xxiii) Borrower fails to comply with the provisions of Section 6.1 above concerning the opening of a DACA Account and the deposit of all Rents therein from and after the occurrence of a Cash Management Trigger Event[.]"

90. Guarantors' obligations under the Guaranty are continuing and absolute under any and all circumstances.

91. Moreover, Guarantors agreed that, "with or without notice or demand, Guarantor will reimburse [Plaintiff], to the extent that such reimbursement is not made by Borrower, for all expenses (including reasonable counsel fees and disbursements) incurred by [Plaintiff] in connection with the collection of the [Guaranteed Obligations] of Borrower or any portion thereof or with the enforcement of this Guaranty[.]"

92. Plaintiff has complied with all the terms and provisions of the Loan Documents.

93. Plaintiff incurred Losses as a result of, among other things, Borrower's failure to pay Taxes, failure to comply with the opening of the DACA Account and deposit of all Rents therein, incurrence of the PPP Loans without Noteholder's consent, Borrower remitting payment in the amount of $17,774.00 towards the Permitted Shareholder Loans while an Event of Default under the Loan Agreement occurred and was continuing, and Noteholder's enforcement of its non-recourse carve-outs.

94. Guarantors breached the Guaranty by failure to promptly pay the Guaranteed Obligations in an amount to be determined.

95. Guarantors should be adjudged to pay the Guaranteed Obligations, as well as all expenses, including reasonable attorneys' fees and costs, incurred by Plaintiff in an amount to be determined.

96. Plaintiff seeks to foreclose upon the Mortgage and recover the outstanding principal amount of $23,216,490.10 together with accrued interest, late charges, default interest, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees, and Guarantors should be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

**WHEREFORE**, Plaintiff demands judgment as follows:

a. That all Defendants, and all persons claiming under them be barred and forever foreclosed of all tight, title, lien, claim and equity of redemption in and to the Mortgaged Premises and Collateral, except for the right of the United States of America and its political divisions, to be redeemed as provided by applicable law;

b. That the Mortgaged Premises and all Collateral be sold as to obtain the greatest return of sale, whether sold jointly as a single parcel or sold separately as two or more parcels;

c. Fixing the amount due to Plaintiff pursuant to the Loan Documents;

d. That the money raised from the sale of the Mortgaged Premises be paid into Court and Plaintiff be paid first (i) the principal sum of $23,216,490.10 due and owing under the Loan Documents, with interest to the time of payment; (ii) late charges; (iii) all sums, including payment of taxes and other charges, which may be expended by Plaintiff to protect its security interest in

the Mortgage, and (iv) reasonable costs and attorneys' fees incurred by Plaintiff in enforcing this action;

  e.  That defendant Borrower be adjudged personally liable under the Loan Documents for losses incurred by Plaintiff for Borrower's failure to pay Taxes and Borrower's remittance of payment towards the Permitted Shareholder Loan;

  f.  That defendants Guarantors be adjudged personally liable under the Guaranty for losses incurred by Plaintiff for Borrower's failure to pay Taxes and Borrower's remittance of payment towards the Permitted Shareholder Loan;

  g.  That defendants Borrower and Guarantors be adjudged liable under the Loan Documents for all amounts of the debt remaining unsatisfied after the application of the proceeds of such sale pursuant to a judgment of foreclosure in accordance with RPAPL §1371;

  h.  That defendants Borrower and Guarantors be adjudged liable under the Loan Documents for reasonable costs and attorneys' fees incurred by Plaintiff in enforcing this action;

  i.  That upon a separate application, Plaintiff shall be entitled to the appointment of a receiver of the rents and profits of the Mortgaged Premises;

[INTENTIONALLY LEFT BLANK]

j. That the purchaser(s) of the Mortgaged Properties at such foreclosure sale be awarded a writ of possession and all other persons in possession of the premises be evicted; and

k. That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, New York
August 9, 2021

**HOLLAND & KNIGHT LLP**

By: */s/ Vivian M. Arias*
 Vivian M. Arias, Esq.

900 Third Avenue, 20th Floor
New York, New York 10022
Tel: (212) 751-3325
Vivian.Arias@hklaw.com
*Attorneys for Plaintiff Wilmington Trust, N.A., as Trustee for the Benefit of the Registered Holders of Wells Fargo Commercial Mortgage Trust 2016-C36, Commercial Mortgage Pass-Through Certificates, Series 2016-C36*